IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

ALBERT CLATTERBUCK, ET AL.,
*Plaintiffs*,

v.

CITY OF CHARLOTTESVILLE,
*Defendant*.

CIVIL ACTION NO. 3:11-CV-00043

MEMORANDUM OPINION

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

Described in the complaint as "impecunious and reliant to a certain extent on begging" for sustenance, Plaintiffs[1] filed this civil rights action alleging violations of their rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs complain that the City of Charlottesville (the "City") has "adopted and enforced" an ordinance that "restricts the right to solicit on the downtown mall and criminalizes conduct in violation of the ordinance." Plaintiffs object to the ordinance's prohibitions against soliciting (or, as Plaintiffs describe it, "begging") "[f]rom or to any person seated within an outdoor café area, during the hours of operation of such outdoor café," "[f]rom or to any person who is conducting business at any vendor table or cart," or "[o]n the Downtown Mall within fifty (50) feet (in any direction) of 2nd Street West and 4th Street East, when those streets are open to vehicular traffic." Charlottesville City Code (1990), § 28-31(a)(5), (6), & (9) (as amended Aug. 16, 2010).

Plaintiffs seek declaratory and injunctive relief, compensatory and nominal damages, and an award of costs and attorneys' fees. The City moved to dismiss, arguing that Plaintiffs lack

[1] Plaintiffs are Albert Clatterbuck, Christopher Martin, Earl McGraw, John Jordan, and Michael Sloan. Plaintiffs are represented by counsel.

standing because they "fail to allege a plausible claim of 'injury in fact,'" and arguing further that Plaintiffs have failed to state a claim upon which relief can be granted. The matter has been fully briefed and supplemented, and the parties' arguments have been heard. As discussed herein, I find that Plaintiffs have standing to bring this action, but I will grant the City's motion to dismiss for failure to state a claim upon which relief can be granted.

## I.

Plaintiffs challenge the following provisions of the Charlottesville City Code:

Sec. 28-31. - Soliciting.

(a) It shall be unlawful for any person to solicit money or other things of value, or to solicit the sale of goods or services:

* * *

(5) From or to any person seated within an outdoor café area, during the hours of operation of such outdoor café;

(6) From or to any person who is conducting business at any vendor table or cart;

* * *

(9) On the Downtown Mall within fifty (50) feet (in any direction) of 2nd Street West and 4th Street East, when those streets are open to vehicular traffic.[2]

(b) For the purposes of this section the following words and phrases shall have

[2] Plaintiffs quote § 28-31(a)(9) as prohibiting soliciting "[o]n the Downtown Mall within fifty (50) feet (in any direction) of 2nd Street West and 4th Street East." However, it is clear from public records that, since August 16, 2010, § 28-31(a)(9) has prohibited soliciting "[o]n the Downtown Mall within fifty (50) feet (in any direction) of 2nd Street West and 4th Street East, *when those streets are open to vehicular traffic*." (Emphasis added.) Additionally, the City's rebuttal to Plaintiffs' opposition to the motion to dismiss notes that "[t]he original online version" of § 28-31 omitted the phrase that limits the application of § 28-31(a)(9) to times when the relevant sections of 2nd Street West and 4th Street East "are open to vehicular traffic," and includes "[a] corrected copy of § 28-31 passed by the Charlottesville City Council on August 16, 2010. . . ."

the meanings ascribed to them below, unless a different meaning is plainly required by the context:

* * *

*Solicit* means to request an immediate donation of money or other thing of value from another person, regardless of the solicitor's purpose or intended use of the money or other thing of value. A solicitation may take the form of, without limitation, the spoken, written or printed word, or by other means of communication (for example: an outstretched hand, an extended cup or hat, etc.).

(c) Any person violating the provisions of this section shall be guilty of a class 3 misdemeanor.

Plaintiffs' first "cause of action" alleges that the ordinance is "not content neutral and advances "no compelling interest." Asserting that "[t]he conduct" they "have engaged in and seek to continue is expressive activity protected by the First Amendment to the United States Constitution," and that the City "adopted all or part of the cited sections in order to restrict the rights of the impoverished to solicit funds for their own well-being," Plaintiffs maintain that, while the ordinance "criminalizes" the "solicitation of money or things of value or the sale of goods and services," it does not criminalize "all other forms of speech, including all other forms of solicitation." Plaintiffs allege that this distinction is "based on the content of the communication." They further assert that the City "does not have a compelling interest in limiting the First Amendment rights of the impoverished to solicit funds for their own well-being" and that '[t]he ordinance violates the First and Fourteenth Amendments to the United States Constitution."

Plaintiffs' second "cause of action" challenges on vagueness grounds the ordinance's prohibitions against soliciting "[f]rom or to any person seated within an outdoor café area, during the hours of operation of such outdoor café" and "[f]rom or to any person who is conducting business at any vendor table or cart." Plaintiffs maintain that subsections (a)(5) and

(6) are "so vague as to require that those subject to its restrictions guess at its meaning" and, because of this alleged vagueness, these subsections "give[] virtually unlimited discretion to law enforcement in enforcing the ordinance," thus "render[ing] [the ordinance] in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution."

Plaintiffs' third "cause of action" alleges that the "[o]rdinance does not serve a significant interest and is not narrowly tailored." Describing the "Downtown Mall in the City of Charlottesville" as "a traditional public forum," Plaintiffs state that the challenged subsections of the ordinance "violate the First and Fourteenth Amendments" because, even "[i]f construed as content neutral," they "do not serve a significant interest of the city and, in any event, are not narrowly tailored to serve the asserted interest."

Under each "cause of action," Plaintiffs assert that they "have and will continue to suffer . . . damages to their right to communicate to the general public," and Plaintiffs seek, *inter alia*, a declaration that the ordinance is "unconstitutional in violation of the First and Fourteenth Amendment to the United States Constitution on its face and as applied to the plaintiffs."

**II.**

There is no question that "[s]olicitation constitutes protected expression under the First Amendment." *Comite de Jornaleros v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) (*en banc*) (citing *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 677–78 (1992); *United States v. Kokinda*, 497 U.S. 720, 725 (1990); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 788–89 (1988); *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981)). The parties point out that the Supreme Court of the United States has not specifically ruled that "begging" is speech protected by the First Amendment; however,

assuming it is necessary to distinguish the concept of "begging" apart from "soliciting" (which is, after all, the act restricted by the ordinance at issue here), it seems readily apparent that the "begging" delimited by Charlottesville's solicitation ordinance is protected speech. The Court has ruled that seeking donations is protected speech, *see Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980) (charitable solicitations "involve a variety of speech interests . . . that are within the protection of the First Amendment"), and several circuit courts of appeals have determined that begging stands on the same ground, *see, e.g.*, *Gresham v. Peterson*, 225 F.3d 899, 904 (7th Cir. 2000) ("Neither the parties to this appeal nor any authorities found by this Court suggest that we should distinguish between restrictions on organized charities and individuals for the purposes of understanding the First Amendment guarantees."); *Loper v. N.Y.C. Police Dept.*, 999 F.2d 699, 704 (2d Cir. 1995) ("We see little difference between those who solicit for organized charities and those who solicit for themselves in regard to the message conveyed.").

**III.**

As previously mentioned, the City argues that Plaintiffs "fail to allege a plausible claim of 'injury in fact'" and therefore lack standing under Article III of the United States Constitution.[3] The City asserts that "none of the plaintiffs has alleged that they have been charged or convicted

[3] A motion to dismiss for lack of standing attacks the district court's subject matter jurisdiction. *See Allen v. Wright*, 468 U.S. 737, 750 (1984) (federal courts are under an independent obligation to examine their own jurisdiction, and standing "is perhaps the most important of [the jurisdictional] doctrines"). Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for dismissal of an action based on lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). As with a motion to dismiss pursuant to Rule 12(b)(6), in considering a motion to dismiss pursuant to Rule 12(b)(1) a court must accept as true all material factual allegations in the complaint and must construe the complaint in favor of the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Falwell v. City of Lynchburg, Virginia*, 198 F. Supp. 2d 765, 772 n. 6 (W.D. Va. 2002).

of a violation of any of these subsections," adding that, although Plaintiffs allege that they regularly beg "within view" of the restaurants and cafés on the Mall, "[t]he Complaint does not allege that any of the plaintiffs beg . . . from persons seated within an outdoor cafe, from any person who is conducting business at any vendor table or cart on the Downtown Mall, or in the restricted vehicle crossover locations." In the City's view, "Plaintiffs do not allege that they solicit in any of the restricted areas and, therefore, do not allege sufficient 'injury in fact' to support standing."

I disagree. Plaintiffs sufficiently allege that they have formerly solicited and wish to solicit in the future from passers-by and customers of the restaurants and other businesses on the Mall, and that their acts of solicitation are inhibited by the ordinance. There is no requirement that one must violate a law in order to have standing to challenge the constitutionality of that law. *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) ("We conclude, however, that the physician-appellants, who are Georgia-licensed doctors consulted by pregnant women, also present a justiciable controversy and do have standing despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes. . . . They should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."); *Evers v. Dwyer*, 358 U.S. 202, 204 (1958) ("We do not believe that appellant, in order to demonstrate the existence of an 'actual controversy' over the validity of the statute here challenged, was bound to ride the Memphis buses at the risk of arrest if he refused to seat himself in the space in such vehicles assigned to colored passengers. A resident of a

municipality who cannot use transportation facilities therein without being subjected by statue to special disabilities necessarily has, we think, a substantial, immediate, and real interest in the validity of the statue which imposes the disability.”).

To satisfy the standing requirements of Article III, a plaintiff must show that:

> (1) [he] has suffered an ‘injury in fact’ that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Stephens v. Cnty of Albemarle*, 524 F.3d 485, 491 (4th Cir. 2008) (citations omitted). “The party invoking federal jurisdiction bears the burden of establishing these elements.” *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). “[A] proper assessment” of the injury in fact element requires a court “to decide whether the Plaintiffs have ‘adduce[d] facts demonstrating that [they have] suffered an invasion of a legally protected interest[.]’” *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011) (quoting *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005)).

The United States Court of Appeals for the Fourth Circuit has

> recognized that, “to demonstrate injury in fact, it [is] sufficient . . . to show that [one’s] First Amendment activities ha[ve] been chilled.” *Smith v. Frye*, 488 F.3d 263, 272 (4th Cir. 2007) (internal quotation marks omitted). “[S]ubjective” or speculative accounts of such a chilling effect, however, are not sufficient. *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S. Ct. 2318, 33 L. Ed.2d 154 (1972). Any “‘chilling’ effect . . . must be objectively reasonable.” *Zanders v. Swanson*, 573 F.3d 591, 593–94 (8th Cir. 2009). Nevertheless, a claimant “need not show she ceased those activities altogether” to demonstrate an injury in fact. *Smith*, 488 F.3d at 272 (internal quotation marks omitted). Government action will be sufficiently chilling when it is “likely [to] deter a person of ordinary firmness from the exercise of First Amendment rights.” *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks omitted).

*Benham*, 635 F.3d at 135 (alteration in original).

Plaintiffs allege that they beg on the Downtown Mall, which is a restricted pedestrian area

of Main Street; that they need to do so in order to sustain themselves; and that the ordinance challenged here causes and will continue to cause harm to their right to free speech. Solicitation, as defined in the ordinance, "may take the form of, without limitation, the spoken, written or printed word, or by other means of communication," including, by way of example provided in the ordinance, "an outstretched hand, an extended cup or hat, etc." Plaintiffs specifically allege that each of them "is impecunious and reliant to a certain extent on begging," that "[o]ne of the locations where each Plaintiff begs is East Main Street in the City, commonly known as the Downtown Mall," and that the ordinance "restricts the right to solicit on the downtown mall and criminalizes conduct in violation of that ordinance." In sum, Plaintiffs allege that the ordinance limits their rights to beg on the Mall, where those rights were previously unfettered, and that they have begged and, if permitted, would continue to beg in the restricted areas of the Mall. The City does not deny that the ordinance limits the right to beg in those restricted areas.[4]

Plaintiffs have alleged a sufficient injury in fact to their First Amendment rights. They have "alleged such a personal stake in the outcome of the controversy as to warrant [their] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Planned Parenthood of S.C. v. Rose*, 361 F.3d 786, 789 (4th Cir. 2004). Plaintiffs' rights to beg or solicit are restricted by the ordinance, and they have standing to challenge those restrictions without first violating the law.

---

[4] And, for standing purposes only, Plaintiffs have adequately claimed that their speech is chilled because soliciting in the form of "an outstretched hand" toward persons within the prescribed areas of the Mall potentially subjects beggars to arrest and prosecution, and Plaintiffs have adequately alleged that they have, in the past, begged within 50 feet on either side of 2nd Street or 4th Street, and intend to do so in the future but for the criminal penalties they face under the ordinance.

**IV.**

Regarding Plaintiffs' allegations that the challenged subsections of the ordinance violate their rights under First and Fourteenth Amendments, I find that Plaintiffs fail to state a claim upon which relief can be granted.[5, 6] The Mall is a public forum where content-neutral, time, place, and manner regulations are nevertheless allowed, and the ordinance is content-neutral.

The ordinance applies to all forms of solicitations, regardless of the solicitor's purpose or the content of the solicitor's speech. Additionally, the ordinance actually leaves intact the right to solicit on *most* of the Mall, and it does not impose an outright ban on begging or panhandling on the Mall – a common-sense reading of the ordinance reveals on its face that it does not, and any casual stroller on the Mall can see that it does not. The ordinance simply limits soliciting (whether by beggars or anyone else) on the Mall by imposing a time, place, and manner restriction on requests for immediate donations of money from persons sitting in the Mall's outdoor cafés, conducting business with one of the Mall's vendors, or within the Mall's street crossings when those crossings are open to vehicular traffic.

As I have already observed, solicitation is a recognized form of protected speech;

---

[5] Despite Plaintiffs' presentation of separate first and third "causes of action," their allegations that the challenged subsections of the ordinance violate their rights under the First and Fourteenth Amendments are intertwined.

[6] When considering a motion to dismiss for failure to state a claim upon which relief can be granted, I apply the pleading standard refined by *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). *See also* Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8. Plaintiffs must allege facts that "state a claim to relief that is plausible on its face," *i.e.*, facts that "have nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949. The following long-held rule still stands: "In evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

however, the right to solicit is not absolute. *Kokinda*, 497 U.S. at 725. Generally speaking, the Mall (a public street closed to vehicular traffic save for two crossings) is a traditional public forum, and speech regulations pertaining to it are subject to strict scrutiny. *See id*. at 726 ("Regulation of speech activity on governmental property that has been traditionally open to the public for expressive activity, such as public streets and parks, is examined under strict scrutiny.") (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)); *see also Frisby v. Schultz*, 487 U.S. 474, 481 (1988) ("[A] public street does not lose its status as a traditional public forum simply because it runs through a residential neighborhood."); *Heffron*, 452 U.S. at 651 (a public street, which was "continually open, often uncongested, and constitute[d] not only a necessary conduit in the daily affairs of a locality's citizens, but also a place where people [could] enjoy the open air or the company of friends and neighbors in a relaxed environment," was a traditional public forum).

> In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO*, 307 U.S. 496, 515, 59 S. Ct. 954, 963, 83 L. Ed. 1423 (1939). In these quintessential public forums, the government may not prohibit all communicative activity.

*Perry*, 460 U.S. at 45.

However, content-neutral regulations of the time, place, and manner of expression in such public fora are permissible if "narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication." *Id*. "[T]he 'principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of agreement

or disagreement with the message it conveys.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 295 (1984)). "[W]hether a statute is content neutral or content based is something that can be determined on the face of it; if the statute describes speech by content then it is content based." *City of L.A. v. Alameda Books, Inc.*, 535 U.S. 425, 448 (2002). "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 643 (1994). Regulations requiring enforcement authorities to "necessarily examine the content of the message that is conveyed" are content-based. *F.C.C. v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984). Content-based regulations may also be identified where they "effectively drive certain ideas or viewpoints" from the forum. *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991). "By contrast, laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Turner*, 512 U.S. at 643 (citing *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984)).

On the face of the ordinance, the restrictions at issue in the instant case are limited to "situations in which people most likely would feel a heightened sense of fear or alarm, or might wish especially to be left alone." *Gresham*, 225 F.3d at 906 (adding that, "[b]y limiting the ordinance's restrictions to only those certain times and places where citizens naturally would feel most insecure in their surroundings, the city has effectively limited the application of the law to what is necessary to promote its legitimate interest").[7] It is important to recognize that this

---

[7] While extrinsic evidence is generally not to be considered at the Rule 12(b)(6) stage, "a court may (continued...)

ordinance leaves unaffected Plaintiffs' rights "to address a willing audience," and only serves to "protect listeners from unwanted communication." *Hill v. Colo.*, 530 U.S. 703, 716 (2000). "The right to free speech . . . may not be curtailed simply because the speaker's message may be offensive to his audience. But the protection afforded to offensive messages does not always embrace offensive speech that is so intrusive that the unwilling audience cannot avoid it." *Id.* (citing *Frisby*, 487 U.S. at 487). "The unwilling listener's interest in avoiding unwanted communication has been repeatedly identified in" the Supreme Court's cases, and the Court has observed that the "'right to be let alone'" has been "characterized as 'the most comprehensive of rights and the right most valued by civilized men.'" *Id.* at 716-17 (quoting *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting)). The ordinance here protects the

---

[7](...continued)
consider official public records . . . so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x. 395, 396-97 (4th Cir. 2006); *see also Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (district court may take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint). The City's reply to Plaintiffs' response in opposition refers me to the video archives of the Charlottesville City Council meetings on August 2 and 16, 2010, which are a matter of public record available for viewing at www.charlottesville.org. The reasonableness of the ordinance and the significant interests protected by it are supported by this public record. The video archives of the meetings disclose that the 50-foot buffer zone in the vehicular crossings was proposed as "absolutely crucial for the safety and security" of Mall patrons because pedestrians were being "distracted" in and near the crossings. The restrictions around the outdoor cafés and vendors were motivated by "complaints from patrons feeling unsafe," were intended to allow patrons of the cafés and vendors the "privacy to enjoy . . . time on the Mall in safety and security," and were compared to the then-already-existing buffer zones around bank entrances and ATMs. The vendor table restriction was specifically intended to protect persons who might feel "threatened or intimidated . . . while they have their money in their hands."

Apparently a 15-foot buffer zone around ATMs and bank entrances has been in place for some time prior to August 16, 2010 (as has the proscription against soliciting from patrons seated in the Mall's outdoor cafés). When enacting the instant ordinance, the City Council rejected placing a buffer zone around the vendor tables and the outdoor cafés, deciding instead to prohibit soliciting from persons conducting business at the vendor tables and from persons seated in the outdoor cafés.

Most (perhaps all) of the outdoor cafés on the Mall are chained or partitioned off in some manner, and it is not difficult to discern the outdoor vendors. It is not part of the record on the instant motion, but it was alluded to in the City Council's August 2, 2010, discussions of the ordinance, and it must be safe to assume that the City has granted a permit, likely for a fee, to the outdoor vendors and the restaurants operating the outdoor cafés on the Mall.

captive audience, *i.e.*, it protects one in such circumstances that one might not freely get away from the solicitor, whether that solicitor be a beggar, a busker, or a politician imploring a vote. A person seated at one of the Mall's outdoor cafés is entitled to the exclusion of importuning hands, much as one would be were one seated inside one of the Mall's restaurants; a person engaged in a business transaction at one of the vendor stations, with wallet or purse or till open, is likewise entitled to conduct that transaction free from such importunities and distraction; and a person waiting or attempting to cross one of the Mall's two vehicular crossings is entitled to proceed unimpeded.

Here, the ordinance does not distinguish between favored and disfavored solicitation, and it does not discriminate based on a solicitor's identity. The ordinance leaves open most of the Mall's "channels of communication," *Perry*, 460 U.S. at 45, while protecting captive audiences (of certain outdoor diners, persons transacting purchases at the outdoor vending tables, and pedestrians waiting to cross the vehicular through-points) in just a very few areas of the Mall, *see, e.g.*, *Hill*, 530 U.S. at 716. The challenged subsections are content-neutral, narrowly tailored time, place, and manner limitations on solicitation.[8]

## V.

The ordinance is not susceptible to a vagueness challenge. Subsection (a)(5) prohibits soliciting "[f]rom or to any person seated within an outdoor café area, during the hours of operation of such outdoor café[.]" Subsection (a)(6) prohibits soliciting "[f]rom or to any person

[8] Charlottesville's solicitation ordinance affords much more deference to Plaintiffs' First Amendment rights than the ordinance at issue in *Smith v. City of Fort Lauderdale, Fla*, 177 F.3d 954, 956-57 (11th Cir.) (affirming summary judgment in favor of Fort Lauderdale, which had enacted an ordinance proscribing begging on a five-mile stretch of beach and two attendant sidewalks), *cert. denied*, 528 U.S. 966 (1999).

who is conducting business at any vendor table or cart[.]" Plaintiffs maintain that subsections (a)(5) and (6) are "so vague as to require that those subject to its restrictions guess at its meaning" and, because of this alleged vagueness, these subsections "give[] virtually unlimited discretion to law enforcement in enforcing the ordinance," thus "render[ing] [the ordinance] in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution."

A statute is void for vagueness where a person of "'common intelligence must necessarily guess at its meaning and differ as to its application . . . .'" *Roberts v. United States Jaycees*, 468 U.S. 609, 629 (1984) (quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)). However, "the Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Roth v. United States*, 354 U.S. 476, 491 (1957) (quotations omitted); *see also U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL–CIO*, 413 U.S. 548, 578–79 (1973). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citation omitted).

When considering the ordinary meaning of the terms "[f]rom or to any person seated within an outdoor café area, during the hours of operation of such outdoor café," and "[f]rom or to any person who is conducting business at any vendor table or cart," I find that the ordinance plainly prohibits soliciting from persons dining in the outdoor cafés on Charlottesville's Downtown Mall, and from persons who are "conducting business" at the outdoor vendor stations on the Mall. "A law is not void for vagueness so long as it (1) establishes minimal guidelines to

govern law enforcement and (2) gives reasonable notice of the prescribed conduct." *Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998) (quotations omitted). Charlottesville's solicitation ordinance proscribes easily identifiable conduct toward a specifically limited audience (as I have already explained, such proscription directly advances the public interest in protecting certain captive audiences), and it provides adequate guidance to law enforcement to avoid arbitrarily suppressing First Amendment liberties.[9]

## VI.

For the reasons discussed herein, the complaint will be dismissed for Plaintiffs' failure to state a claim upon which relief can be granted.[10]

---

[9] To the extent Plaintiffs contend that they could be prosecuted merely for passive conduct in view of persons in the outdoor cafés or at the vendor stations, a reasonable interpretation of subsections (a)(5) and (6) by the Circuit Court for the City of Charlottesville could render the subsections constitutional. A constitutional interpretation might find, for example, that the ordinance is violated by holding a placard in the face of a customer at an outdoor café or vendor station, but that passively holding the placard while the holder is within view of such a customer (a practice one sees every day on the Mall) is not prohibited. In any event,

> [s]triking down ordinances . . . as facially void for vagueness is a disfavored judicial exercise. Nullification of a law in the abstract involves a far more aggressive use of judicial power than striking down a discrete and particularized application of it. . . . It is preferable for courts to demonstrate restraint by entertaining challenges to applications of the law as those challenges arise.

*Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998) (affirming district court's denial of motion to enjoin a curfew ordinance).

[10] I add that Plaintiffs are not entitled to the injunctive and declaratory relief they request, given that their complaint fails to state a claim upon which relief can be granted.

A plaintiff seeking preliminary injunctive relief must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) a preliminary injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. F.E.C.*, 575 F.3d 342, 346-47 (4th Cir. 2009) (recognizing that *Winter* was in "fatal tension" with Fourth Circuit precedent governing the

(continued...)

An appropriate order accompanies this memorandum opinion.

Entered this 18th day of January, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

[10](...continued)
grant or denial of preliminary injunctions as articulated in *Blackwelder Furniture Company of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977), and therefore expressly adopting the *Winter* standard), *vacated on other grounds*, __ U.S. __, 130 S. Ct. 2371, 2010 WL 1641299 (April 26, 2010), *reissued on remand*, 607 F.3d 355 (4th Cir. June 8, 2010) (reissuing Parts I and II of earlier opinion, 575 F.3d at 345-47, stating the facts and articulating the standard for the issuance of preliminary injunctions). Inasmuch as Plaintiffs' allegations fail to state a claim upon which relief may be granted, Plaintiffs fail to "establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, [or] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Declaratory relief is awarded if the relief sought (1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding. *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994), *overruled on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). As the ordinance is not vague and does not otherwise violate Plaintiffs' rights under the First and Fourteenth Amendments, declaratory relief is not warranted.